*265 OPINION of the Court, by
Judge Logan
The rppellants, wh* were defendants in the suits at law, consented that judgments should be entered against them to *266 be levied of the assets'which then were or might thereafter be in their hands as administrators.
Huiband yefts propertym truf-tees for ufe of wife, who lives apart from him, this property is not liable to after contra&ed debts of the hufbind»
Where fhe-t\fí empannels a jury to inquire whether property belongs to the debtor a* gainft whom'he has an execution, the inqueft found that the property is fub-jett to theexe-cution, excufes the iherift from trefpafs for feiz ing the property
Where adm’x claimed the property fei sed as belonging to her in her own right, and the inqueft of the iheriiT found againft her right, whereupon (he replevied the debt, to prevent the property from being fold r—‘this does not preclude her from aiTerting her right to the property feized, nor preclude her from (hewing ¿he had no af-feft»
Upon these judgments executions were sued out, and levied on property claimed by one ot tbe administrators in her own right. A contest ensued as to the right of property, and a jury being empannelled, found the property subject to the debts. The administrators then replevied, and now exhibit their bill in chancery for relief. _ . ,
The following points seem necessary for consideration in the cause : 1st. The effect of the judgment under the agreement of the parties ? 2d. Whether the property executed belonged to the admimstratnx in her own right, and veas free from the executions . 3d. It this property vested in her, could chancery have interfered with propriety, under the circumstances of the case, to prevent its sale ? And 4th, if it could, ought the administratrix to be now relieved in equity against the replevy bonds ? . . .
. Upon the first point it need only be observed, that the entry of the judgment by tbe agreement of the parties, seems to take it out of the operation of the rule, which wouid presume assets from the judgment when taken in the ordinary course of proceedings, l'was obviously the intention of the parties, that the trators should not be liable, unless in fact they then had, or might thereafter have ussetsin their hands : neither of which is proven in the case, unless the property taken by the sheriff and replevied belonged to M Ginty : which leads to the second point of inquiry.
2d. Was the property executed subject to the executions i , , • .
, , • . - With respect to the widow's right to this property, n is shewn that prior to the intermarriage between her and M’Ginty, he- executed a writing, that the estate belonging to her should continue, in her family after his death. Some years after the marriage, they agreed to separate and divide the estate equally between them. Whereupon M’Ginty executed a deed conveying certain property to Robert Poague, in trust for his wife, the said administratrix, which was duly proven and recorded : and they have continued ever since to live separate, each contracting their own debts on the credit *267 of the property under that division ; on part of the pro-nerty thus conveyed, the execntions were levied.
Replevying a debt does not bar a previous equity.
Equity will interfere to prevent a fate of llaves upon fund-y executions, to fatisfy which the Haves werg not liable*
Under this state of things the question arises, whether the property thus transferred is liable to M’Gintyfs debts subsequently contracted.
If the negative of the proposition required authority to support it, a reference to Roberts on fraudulent conveyances, p. 218, 222, Eq. Ca. Abr. 354, 1 Atk. 15, will furnish it.
We proceed to the 3d point proposed to be considered j whether equity could with propriety have interposed and arrested the sale of this property ?
One of the great ends of equity, is to aid the common law in cases in which its.protection and redress are inadequate to the common purposes of justice.
It is believed the present is a case of that description ; in which sundry executions, under as many different judgments, have been levied on property which we have just determined was not subject to them ; but in which the officer was protected from all liability under the law, by the finding of the jury. Under these circumstan? ces, it would perhaps have been better for her at once to have abandoned her right, although possibly the favorite slaves of her own raising might thereby be lost, rather than to have been driven to separate actions at law for redress.
But it appears in the cau.se,- that the executions were levied on slaves. Now when we consider how often the common law redress of remunerating in damages the loss of slaves thus seized and sold would poorly compensate the owner, it is conceived as forming a just case lor the interposition of chancery to enjoin the sale at law. The case of Meaux vs. Haggin, &c.(a) decided by this court at the last term, was in principle just such a case, except that in that case the court thought the slaves subject to the debt. But the question of jurisdiction .was properly not controverted.
If, then, this property was not subject to those debts, and if a court of equity might properly have enjoined, the sale thereof, we are next to inquire, whether the execution of the replevy bonds does bar that equitable claim to relief ?
That the permitting judgment to go fay default amounts la the general to an admission of assets, will not b$ *268 questioned ; or that an administrator, in consideration of forbearance to sue, See.' promises to pay the debt, maybe answerable for the same out of his own estate," will not be denied ; and that a replevy bond has the force and effect of a judgment, is also a point to be conceded.
Still it is believed, that the true object of the law au-thorising replevying, was to give time, after the rendition of the judgment, to prepare to discharge it, and so prevent a sacrifice ef property. But that an existing equity, or proper cause for relief in chancery after the rendering of the judgment, should be barred by the re-plevying, is a point not to be conceded. Indeed, if it were a matter of doubt, it is believed it ought now to be taken as settled, from a long and uniform course of decision, by which the right to relief in equity after re-plevying seems never to have been questioned.
If, then, replevying does not in the general affect a prior equity, or deprive the party of a previous existing claim on the chancery side of the court, why should it operate more rigidly on an administrator ? If it should be answered, that because replevying is an implied admission of assets ; we would add, that this implication ought not to be indulged, when the contrary is shewn in a suit in chancery, founded upon a prior equity ; blit especially, when thereby the creditor can sustain no other injury, than he would have done if the party had sued for the same relief before the replevying ; and when too, the replevying appears so clearly to have been an act of necessity, as in this case, to avoid a sale and sacrifice of property, which to have regained, or its equivalent, must have subjected the party to a multiplicity of actions and great trouble and expence.
With respect to the land which fell to M’Ginty, in the division of the property under the agreement, it need only be observed, that we are of opinion it cars produce no effect in this cause.
Wherefore it is decreed and ordered, that the decree of the circuit court be reversed and set aside ; and that the cause be remanded to the said court, who are hereby directed to enter a decree enjoining the proceedings on the judgments at law as against the administrators in their own right, but with leave to levy the executions upon assets if any shall come to their hands, and also for *ost*.

 Ants, 244,